1

2

3

4 UNITED STATES DISTRICT COURT

5 NORTHERN DISTRICT OF CALIFORNIA

6

7 RICARDO MERCADO-GUILLEN,　　　　Case No. 18-cv-00727-HSG

8 　　　　Plaintiff,　　　　**ORDER GRANTING IN PART AND
DENYING IN PART PETITION FOR**

9 　　v.　　　　**WRIT OF HABEAS CORPUS AND
DENYING MOTION FOR**

10 KIRSTJEN NIELSEN, et al.,　　　　**TEMPORARY RESTRAINING ORDER**

11 　　　　Defendants.　　　　Re: Dkt. Nos. 1, 10

12 　　　　Petitioner Ricardo Mercado-Guillen is currently in the custody of U.S. Immigration and

13 Customs Enforcement ("ICE") pending the conclusion of his removal proceedings. On February

14 1, 2018, Mr. Mercado[1] filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in

15 which he requests the Court to order his release from custody or to order a bond hearing before an

16 Immigration Judge ("IJ"). Dkt. No. 1 ("Petition"). On February 5, 2018, Mr. Mercado filed a

17 motion for a temporary restraining order ("TRO") seeking to enjoin his continued detention

18 without a bond hearing. Dkt. No. 10.

19 　　　　After completion of the briefing on both the petition and the motion for a TRO, the Court

20 ordered the parties to provide supplemental briefing to address the Supreme Court's decision in

21 *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). Dkt. No. 18. Having reviewed the completed

22 briefing, the Court finds this matter suitable for resolution without a hearing. Civ. L.R. 7-

23 1(b). For the following reasons, the petition is GRANTED in part and DENIED in part. The

24 motion for a TRO is DENIED as moot.

25 **I.　　BACKGROUND**

26 　　　　Mr. Mercado is a Mexican citizen who has lived in the United States since January of

27

28 _____

[1] The petition generally refers to the Petitioner as "Mr. Mercado," so the Court will do so as well.

1    2000.  Petition ¶ 13.  Mr. Mercado has three children who are U.S. citizens, and has been

2    employed in Oakland since 2003.  *Id* ¶ 14.

3            In April of 2007, Mr. Mercado was convicted of driving under the influence.  Dkt. No. 15-

4    1 ("Hubbard Decl.") ¶ 3.  On April 4, 2012, ICE removed Mr. Mercado to Mexico.  *Id.* ¶ 4.  On or

5    around April 18, having re-entered the United States from Mexico, Mr. Mercado was again

6    detained and removed to Mexico.  Petition ¶ 16; Hubbard Decl. ¶ 4.  Mr. Mercado immediately re-

7    entered the United States.  Petition ¶ 16.  On April 10, 2017, Mr. Mercado submitted a letter to the

8    United States Citizenship and Immigration Services Asylum Office, requesting that ICE decline to

9    order expedited removal because Mr. Mercado was an applicant for derivative asylum based on

10   his wife's May 6, 2016 asylum application.  Petition ¶¶ 17–18; Dkt. No. 4 at 6–7.  On July 11,

11   2017, ICE apprehended and detained Mr. Mercado for illegally re-entering the United States after

12   removal.  Petition ¶ 19; Dkt. No. 15 ("Response") at 5.  Mr. Mercado expressed a fear of

13   persecution in Mexico and was referred for a reasonable fear interview with an asylum officer, but

14   on July 21, 2017, the Asylum Office made a negative reasonable fear finding.  Petition ¶ 20.  Mr.

15   Mercado requested review by an Immigration Judge ("IJ") that same day.  *Id.*  On August 15,

16   2017, the IJ affirmed negative fear finding of the Asylum Office, and returned the case to ICE to

17   execute the removal order.  Petition ¶ 21; Response at 5.

18           On or around August 15, 2017, Mr. Mercado filed a motion in the Ninth Circuit to stay

19   removal.  Petition ¶ 22; Response at 5.  Mr. Mercado's motion was denied on January 26, 2018.

20   Response at 5.  Mr. Mercado subsequently filed a motion for reconsideration, which was granted

21   by the Ninth Circuit on January 30, 2018.  Petition ¶ 23; Response at 5.  On September 20, 2017,

22   ICE served Mr. Mercado with its decision to continue his detention during the pendency of his

23   appeal.  Response at 5.  On December 20, 2017, Mr. Mercado filed a motion to seek a prolonged

24   immigration custody hearing, pursuant to *Rodriguez v. Robbins* (*"Rodriguez III"*), 804 F.3d 1060

25   (9th Cir. 2015).  Petition ¶ 24.  The IJ denied the motion on December 27, 2017, citing lack of

26   jurisdiction.  Petition ¶ 25; Response at 5; Hubbard Decl., Ex. G at 2 ("[R]espondents in negative

27   reasonable fear proceedings are not in removal proceedings under section 240 of the [Immigration

28   and Nationality] Act and are not seeking direct or collateral review of a final removal order.

1    Instead, they are seeking withholding of a final removal order under section 241(a)(5) of the Act,

2    and will remain subject to the reinstated removal order even if withholding of removal is

3    ultimately granted."). On January 9, 2018, Mr. Mercado again filed a motion for a custody

4    hearing based on his detention of over 180 days. Petition ¶ 26. The IJ again denied the motion for

5    lack of jurisdiction on January 12. Petition ¶ 26; Response at 5. On January 19, 2018, Mr.

6    Mercado filed a notice of appeal with the Board of Immigration Appeals ("BIA"). Petition ¶ 27.

7    That appeal was dismissed on April 5, 2018. Dkt. No. 22. Mr. Mercado now petitions for a writ

8    of habeas corpus, asserting that his continued detention without a bond hearing is unlawful.

9    **II.     PETITION FOR WRIT OF HABEAS CORPUS**

10          **A.     Detention of Non-Citizens Under the Immigration and Nationality Act**

11          Multiple provisions within the Immigration and Nationality Act ("INA") govern the

12   detention of non-citizens awaiting removal from the United States. Section 1226(a) gives the

13   Department of Homeland Security ("DHS") authorization to detain a non-citizen "pending a

14   decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). 8

15   U.S.C. § 1231(a) governs the detention of non-citizens who have already been ordered removed.

16   Section 1231(a) authorizes detention both during and after the "removal period." The removal

17   period generally lasts 90 days beginning from the latest of: (1) the date the order of removal

18   becomes administratively final; (2) if a court orders a stay of the removal of the alien, the date of

19   the court's final order; or (3) if the alien is detained or confined (except under an immigration

20   process), the date the alien is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(A);

21   *Diouf v. Napolitano* ("*Diouf II*"), 634 F.3d 1081, 1085 (9th Cir. 2011). During the removal

22   period, detention is mandatory. 8 U.S.C. § 1231(a)(2). Section 1231(a)(6) grants DHS the

23   discretionary authority to continue to detain non-citizens beyond the removal period, if that person

24   "has been determined by the Attorney General to be a risk to the community or unlikely to comply

25   with the order of removal." 8 U.S.C. § 1231(a)(6); *Prieto-Romero v. Clark*, 534 F.3d 1053, 1059

26   (9th Cir. 2008). The parties do not dispute that Mr. Mercado is being detained pursuant to the

27   discretionary authority authorized under section 1231(a)(6). Response at 2; Dkt. No 16

28   ("Traverse") ¶ 9.

3

1    A non-citizen who expresses fear of removal to the country specified in the removal order

2   is referred to an asylum officer for a "reasonable fear determination." 8 C.F.R. § 238.31; 8 C.F.R.

3   § 241.8(e). If it is determined that the non-citizen has a reasonable fear of persecution or torture,

4   the asylum officer refers the matter to an immigration judge to consider the request to withhold

5   removal. 8 C.F.R. § 208.31(e). In these "withholding-only" proceedings, the IJ may only

6   consider whether the non-citizen is "eligible for withholding or deferral of removal," and "all

7   parties are prohibited from raising or considering any other issues, including but not limited to

8   issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of

9   relief." 8 C.F.R. § 1208.2(c)(3)(i).

10      **B.      Legal Framework**

11       In *Zadvydas v. Davis*, the Supreme Court considered whether 8 U.S.C. § 1231(a)(6)

12   allowed the detention of a non-citizen being held beyond the removal period. *Zadvydas v. Davis*,

13   533 U.S. 678 (2001). The Court determined that a statute permitting that type of indefinite

14   detention would "raise a serious constitutional problem," and that the section 1231(a)(6) "limits an

15   alien's post-removal-period detention to a period reasonably necessary to bring about that alien's

16   removal from the United States." *Id.* at 689–90. The Court held that six months was a

17   presumptively reasonable period of detention for a non-citizen held under section 1231(a)(6), and

18   that after this period, once the non-citizen "provides good reason to believe that there is no

19   significant likelihood of removal in the reasonably foreseeable future, the Government must

20   respond with evidence sufficient to rebut that showing." *Id.* at 701.

21       In *Diouf II*, the Ninth Circuit held that "prolonged detention under § 1231(a)(6), without

22   adequate procedural protections would raise serious constitutional concerns." *Diouf II*, 634 F.3d

23   at 1086 (internal quotation marks omitted). The court held that a non-citizen "facing prolonged

24   detention under § 1231(a)(6) is entitled to a bond hearing before an immigration judge and is

25   entitled to be released from detention unless the government establishes that the [non-citizen]

26   poses a risk of flight or a danger to the community." *Id.* at 1092. The court defined "prolonged"

27   detention as detention that "has lasted six months and is expected to continue more than minimally

28   beyond six months." *Id*. at 1092 n.13.

4

### C.    Application to Mr. Mercado

Respondents make several arguments in an effort to distinguish Mr. Mercado's case from the facts of *Diouf II*.[2]  Respondents contend that *Diouf II* does not apply to Mr. Mercado's petition because Mr. Mercado, as a petitioner in withholding-only proceedings, will remain subject to removal regardless of the result of his application for withholding of removal.  Response at 9–10.  This argument is unavailing.  *Diouf II* did not draw Respondents' proposed distinction between different types of section 1231(a)(6) detainees, stating that "[s]ection 1231(a)(6) encompasses aliens such as Diouf, whose collateral challenge to his removal order (a motion to reopen) is pending in the court of appeals, as well as [] aliens who have exhausted all direct and collateral review of their removal orders but who, for one reason or another, have not yet been removed from the United States."  *Diouf II*, 634 F.3d at 1085.  Thus, *Diouf II* applies to all non-citizens who are detained under section 1231(a)(6).  *See Cortez v. Sessions*, No. 18-CV-01014-DMR, 2018 WL 1510187, at *8 (N.D. Cal. Mar. 27, 2018) ("The Ninth Circuit in *Diouf II* extended the right to a bond hearing to *all* non-citizens detained more than six months under section 1231(a)(6)").

Respondents additionally contend that because, unlike the petitioner in *Diouf II*, Mr. Mercado was never lawfully admitted into the United States, the "government's interest in detaining aliens previously removed who have illegally reentered the United States presents qualitatively different concerns than those addressed in *Diouf II*."  Response at 9.  Respondents do not explain how this factual distinction between Mr. Mercado's case and Mr. Diouf's case would alter this Court's analysis, other than again noting that Mr. Mercado's removability is not in question.  For the same reasons outlined above, the Court finds that Respondents have failed to distinguish Mr. Mercado's case from the group of non-citizen detainees addressed in *Diouf II*.

---

[2] Respondents also initially contended that the Court should dismiss Mr. Mercado's habeas petition for failure to exhaust administrative remedies, because his January 19, 2018 appeal to the Board of Immigration Appeals was still pending at the time of Respondents' briefing.  Response at 7; Petition ¶ 27.  Mr. Mercado's appeal to the BIA has since been dismissed.  *See* Dkt. No. 22.  As a result, whether or not administrative exhaustion is required, the Court finds that Mr. Mercado has satisfactorily exhausted his available judicial and administrative remedies.  *See Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) ("[A] court may waive the prudential exhaustion requirement if administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.") (internal quotation marks omitted).

1    Respondents also contend that, under *Zadvydas*, Mr. Mercado must demonstrate that there

2    is not a "significant likelihood of removal in the reasonably foreseeable future" in order to receive

3    a bond hearing.  Response at 10 (citing *Zadvydas*, 533 U.S. at 701).  *Zadvydas*, however, did not

4    consider the present question of whether detention beyond the presumptively reasonable six-

5    month period entitles a non-citizen held to a bond hearing when removal is not imminent. The

6    Ninth Circuit examined this question with respect to section 1231(a)(6) in *Diouf II*.  *Diouf II*'s

7    ruling does not conflict with *Zadvydas*.  Thus, the Ninth Circuit has held that non-citizens detained

8    under section 1231(a)(6) beyond the presumptively-reasonable six month period are entitled to a

9    bond hearing when removal is not imminent.  *Diouf II*, 634 F.3d at 1092-93 and n.13.

10   Respondents' contention that "Petitioner has not and cannot show that he is not subject to removal

11   in the reasonably foreseeable future" is not sufficient to demonstrate that Mr. Mercado's removal

12   is imminent, given that more than two months have elapsed since Respondents first made that

13   argument, and Mr. Mercado remains in ICE custody.  *See* Response at 10.

14   Respondents finally contend that, based on *Rodriguez III* and now *Jennings*, the absence of

15   higher court analysis with respect to non-citizens detained under section 1231(a) indicates that the

16   reasoning of the Ninth Circuit in *Diouf II* may be invalid.  Dkt. No. 20 at 3–4.  But *Diouf II*

17   remains good law.  The Supreme Court's decision in *Jennings* overruled the holdings in

18   *Rodriguez III* and *Casas-Castrillion* that non-citizens detained under sections 1225(b)(1),

19   1225(b)(2), and 1226(c) are entitled to bond hearings every six months, finding that *Rodriguez III*

20   misapplied the canon of constitutional avoidance.  *Jennings*, 138 S. Ct. at 842.  The *Jennings*

21   Court specifically noted the difference between the language in section 1231(a)(6) and the

22   language in sections 1225(b) and 1226(c).  *Id*. at 844.  *Jennings* therefore left in place the

23   *Zadvydas* ruling with respect to section 1231(a)(6), which serves as a legal basis for the holding of

24   *Diouf II*.  *See Cortez v. Sessions*, No. 18-CV-01014-DMR, 2018 WL 1510187, at *8 (N.D. Cal.

25   Mar. 27, 2018) ("*Diouf II* remains good law which this court is bound to follow.") (citing *Ramos

26   v. Jennings*, No. 18-cv-00413-JST, 2018 WL 1317276, at 3 (N.D. Cal. Mar. 13, 2018)).

27   Mr. Mercado falls directly within the category of non-citizens held under section

28   1231(a)(6) governed by *Diouf II*, which remains valid precedent that this Court must follow.

6

1    Therefore, Mr. Mercado is entitled to a bond hearing, during which DHS must establish by clear

2    and convincing evidence that he is a flight risk or a danger to the community if his detention is to

3    continue.  This Court does not have sufficient information to determine in the first instance

4    whether Mr. Mercado is a flight risk or a danger to the community, and expresses no view on that

5    point at this stage.  For that reason, Mr. Mercado is not entitled to immediate release from custody,

6    and his request for immediate release is **DENIED**.

7    **III.    CONCLUSION**

8            For the foregoing reasons, Mr. Mercado-Guillen's petition for writ of habeas corpus is

9    **GRANTED IN PART** and **DENIED IN PART**.  Within 15 days of the date of this order, Mr.

10   Mercado-Guillen must be provided with a bond hearing before an immigration judge.  At that

11   hearing, DHS must establish by clear and convincing evidence that Mr. Mercado-Guillen is a

12   flight risk or a danger to the community in order to continue his detention.

13           In his motion for a temporary restraining order, Mr. Mercado-Guillen seeks identical relief

14   as in his petition. His motion for a temporary restraining order is therefore **DENIED** as moot.

15           **IT IS SO ORDERED.**

16   Dated:   4/19/2018

17

18   HAYWOOD S. GILLIAM, JR.
     United States District Judge

19

20

21

22

23

24

25

26

27

28